**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROGER HALL,

      Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No. 1:25-cv-12956

Honorable Robert W. Gettleman

Magistrate Judge Keri L. Holleb Hotaling

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S *RENEWED* MOTION
FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE
DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A**

Plaintiff, ROGER HALL ("Hall" or "Plaintiff"), submits this Memorandum in Support of Plaintiff's Renewed Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in First Amended Schedule A (the "Defaulting Defendants") based on Plaintiff's action for Copyright Infringement (Count I). Excluded from this motion are Defendants who have settled with Plaintiff and Defendants who have been dismissed.

Plaintiff is the owner of the Copyright Registrations that protect the creative content of the Roger Hall Works. [1] at ¶ 8. Hall is a wildlife illustrator with more than twenty-five years of experience. *Id.* Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Roger Hall Works. *Id.* at ¶ 9. Thus, the Roger Hall Products and Works are widely recognized and exclusively associated by consumers, the public, and the trade as being associated with and authorized by Plaintiff. *Id.*

The success of the Roger Hall Works is due in large part to Plaintiff's marketing, promotional, and distribution efforts. *Id.* at ¶ 13. As a result of Plaintiff's efforts, the quality of Plaintiff's Roger Hall Products, the promotional efforts for Plaintiff's products and designs, press

1

and media coverage, and social media coverage, members of the public have become familiar with the Roger Hall Works and associate them exclusively with Plaintiff. *Id.* at ¶ 14. Plaintiff has made efforts to protect Plaintiff's interests in and to the Roger Hall Works. *Id.* at ¶ 15. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Roger Hall Works without the express written permission of Plaintiff. *Id.*

On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff Products, while selling inferior imitations of Plaintiff's Products. *See id.* at ¶ 11. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing Product offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* at ¶ 7. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant online marketplace accounts (collectively, the "Defendant Internet Stores") identified in First Amended Schedule A. *Id.* at ¶¶ 2, 16. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Infringing Roger Hall Products to consumers within the United States, including the State of Illinois. *Id.*

Plaintiff filed this action on October 23, 2025, alleging Copyright Infringement and seeking statutory damages and injunctive relief. [1]. This Court granted Plaintiff's *Ex Parte* Motion for Leave to Conduct Expedited Discovery and Service of Process by E-mail and/or Electronic Publication (the "Order") on October 29, 2025 [26]. The Order permitted Plaintiff to

complete service of process to Defaulting Defendants by electronic publication or by sending an e-mail to any e-mail addresses provided for Defaulting Defendants by third parties. The Defendants identified in First Amended Schedule A that are associated with Temu, LLC ("Temu") accounts were properly served on December 29, 2025. [30]. The Defaulting Defendants have not entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment, finding that Defaulting Defendants are liable on Count I of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 17 U.S.C. § 504(c)(2) for willful copyright infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Temu, as well as any newly discovered assets, be transferred to Plaintiff.

## **ARGUMENT**

### I.  **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since the Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a

prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial internet websites and online marketplace accounts operating under the Defendant Internet Stores, the Defaulting Defendants have targeted sales from Illinois residents by operating various Defendant Internet Stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold products bearing infringing versions of Plaintiff's federally registered copyrights to residents of Illinois. [1] at ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See, e.g., NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g., The MacNeil Studio LTD. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10532 (N.D. Ill. Oct. 31, 2025); *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10575 (N.D. Ill. Oct. 31, 2025).

## II.   SERVICE OF PROCESS IS PROPER AS TO EACH DEFENDANT UNDER *KANGOL*

The Seventh Circuit recently held that the Hague Convention prohibits email service in China where the Convention applies, but that the district court must first determine whether the Convention applies at all. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 795–96 (7th Cir. 2026). The Convention does not apply "where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15,

4

1965, 20 U.S.T. 361, 362. The standard this district applies requires "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address," and is conjunctive: a plaintiff must not only ascertain a listed address but verify it, for "[b]are assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location connected to the defendant, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022).

Article 1 also turns on the identity of the party to be served. Under PRC law, only a defendant's registered Chinese-character legal name, or the registered Chinese-character name of the natural person to be served, has legal status for a Central Authority request; a romanized or English-translated platform trade name is not the defendant's legal identity, and a Request naming a defendant only in that form is, as Aaron Lukken explains, "assured to fail" because the executing local intermediate people's court cannot reconcile a romanized identifier to a registered entity in the SAMR registry. Aaron Lukken, *Chinese company names, flawed addresses, and the high likelihood of Hague Service failure*, Hague Law Blog (Mar. 2024)[1]; *see* Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants*, Hague Law Blog (July 2024) [2] (prescribing identification of the registered Chinese-character name and registered address before invoking the Convention).

---

[1] Available at https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/ (last visited Jul. 28, 2026).
[2] Available at https://www.haguelawblog.com/2024/07/a-hague-compliant-roadmap-for-service-on-schedule-a-defendants/ (last visited Jul. 28, 2026).

For every one of the 147 Defaulting PRC Defendants, Plaintiff's investigation comprised: (a) cataloging the platform-disclosed address for each Defendant; (b) searching that address on five independent, publicly available resources, comprising a Google web search, a Baidu web search, Google Maps, Baidu Maps (百度地图), and Amap (高德地图), and capturing a screenshot of each; (c) checking the seller against the Tianyancha (天眼查) PRC business-registry database; and (d) decomposing each platform identifier against the four required SAMR name elements (行政区划, 字号, 行业表述, 组织形式). Jiang Decl. ¶¶ 3–8; Ex. A (per-defendant address record and captures); Ex. B (registry-check detail). As a native reader of Chinese and familiar with PRC address structure and mapping services, Plaintiff's counsel read and interpreted the Chinese-language results and recorded the per-defendant result for each. Jiang Decl. ¶¶ 4–5.

The addresses for all PRC Defaulting Defendants are not known. For all 147 Defaulting Defendants, each identified by their assigned Schedule number in Exhibits A and B, Plaintiff's investigation determined that the addresses are not known based on two independent grounds. First, none of these platform identifiers supplies a registered Chinese-character legal name in the four-element SAMR structure. Instead, each is a romanized pinyin string, an arbitrary or English-fabricated storefront alias, or a partial trade-name lacking the required components. Therefore, a Central Authority request naming any of them in its platform form is the pattern practitioner authority identifies as "assured of failure." *See* Jiang Decl. ¶¶ 5–7; Ex. A; Lukken, *Chinese company names*, *supra*. Second, and independently, each platform-disclosed address failed verification after reasonably diligent efforts, in recurring patterns documented in the exhibits: many stated addresses resolve no lower than a district, township, rural village, or residential community rather than the stated street and unit, or do not resolve at all; others name a specific

6

building, unit, or workstation (工位) that map data does not confirm, or that is a shared-workspace, incubator, or "residence-declaration" registration rather than the Defendant's own premises; others are landmark-relative references or virtual, cluster-registration (集群地址), or business-secretary (商务秘书地址) addresses shared among multiple unrelated companies; and for twenty Defendants (Defendant Nos. 36, 40, 46, 48, 51, 54, 55, 69, 82, 95, 100, 109, 121, 123, 130, 142, 149, 170, 173, and 175) the seller-information page is no longer available and no searchable address exists. *See* Jiang Decl. ¶¶ 5–7; Exs. A, B. Each address was thus ascertained but could not be verified to a serviceable, defendant-connected location, so it is "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796; *Zuru*, 2022 WL 14872617, at *2.

Nineteen of the Defaulting Defendants state a Hong Kong Special Administrative Region address rather than a mainland one (Defendant Nos. 4, 8, 10, 12, 20, 26, 38, 43, 44, 45, 58, 64, 67, 72, 91, 94, 111, 115, and 148). For the 19 Defaulting Hong Kong Defendants, email service is proper because *Kangol* is inapplicable to Hong Kong addresses. Hong Kong is a Convention territory as a Special Administrative Region of China, *see Broan-NuTone LLC v. Conglom Hong Kong Ltd.*, No. 23-CV-393-JPS, 2023 WL 8784668, at *2 (E.D. Wis. Dec. 19, 2023), but it maintains its own declarations under the Convention, and as to Article 10(a) it has entered "No opposition." HCCH, China (Hong Kong SAR) – Authority[3]. Under *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017), service through Article 10(a) "is permissible if two conditions are met: (1) the receiving state has not objected to service by mail; and (2) service by mail is authorized under otherwise-applicable law." Both are satisfied: Hong Kong has not objected, and Rule 4(f)(3) supplies the otherwise-applicable authorization. Email, moreover, falls within Article 10(a). The Hague Conference's Special Commission on the Practical Operation of the

---

[3] Available at https://www.hcch.net/en/states/authorities/details3/?aid=393 (last visited Jul 27, 2026).

Convention specifically notes that "Article 10(a) includes transmission and service by email." July 2024 Conclusions and Recommendations ¶ 105; *see Deckers*, 2026 WL 1802901, at *3 n.5 (quoting same). Because Hong Kong does not oppose to the Article 10(a) channel through which email travels, the objection that drove *Kangol* is absent, and email service on a Hong Kong Defendant is consistent with the Convention. Additionally, the addresses either cannot be found or do not correspond to valid business or mailing addresses for Defendants. Therefore, service by email on the Hong Kong Defendants is proper.

Because the address of each PRC Defendant is not known within the meaning of Article 1, the Hague Convention does not apply, and the two "routes" to default judgment described in this Court's Order, which govern only where the Convention *does* apply, are not a precondition to relief here. *See* Order [36] (citing *Bestway Inflatables & Material Corp. v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 11696, 2025 WL 1696438, at *1 (N.D. Ill. June 17, 2025)). Hong Kong SAR does not oppose Article 10(a) of the Hague convention. Thus, email service is proper and *Kangol* does not apply. Service of process by e-mail and electronic publication, as this Court authorized in its Order granting expedited discovery and alternative service [26] and as permitted under Federal Rule of Civil Procedure 4(f)(3), was therefore proper as to each Defaulting Defendant, and entry of default judgment is appropriate.

## III.   PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit, or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On October 23, 2025, Plaintiff filed the Complaint [1] alleging Copyright Infringement

(Count I). The Defendants were properly served on December 29, 2025. [30]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

## IV. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by the Defaulting Defendants identified in First Amended Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate and, consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 17 U.S.C. § 504(c)(2) for willful copyright infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and an order that all assets in Defaulting Defendants' financial accounts operated by Temu, as well as any newly identified accounts, be transferred to Plaintiff.

## A. Copyright Infringement

To properly plead a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyrights in the Roger Hall Works. [1] at ¶¶ 3, 5, 10. Plaintiff alleged in the Complaint that Plaintiff's Roger Hall Works have been infringed. *Id.* at ¶¶ 17–22. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful copyright infringement against the Defaulting Defendants.

## B. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c)(1), a plaintiff in a case involving the use of a copyright infringement may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

10

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (finding that "[w]illful blindness is knowledge, in copyright law").

Here, Defendants had knowledge that their activities constituted infringement or at least a reckless disregard of Plaintiff's rights in the Roger Hall Works because Defendants are intentionally coupling the Infringing Roger Hall Products with goods derived from images in Plaintiff's copyrighted works. Thus, Plaintiff's request for a statutory damages award of one hundred thousand dollars ($100,000) from Defaulting Defendants for willful copyright infringement of the Roger Hall Works is appropriate. *See, e.g., The MacNeil Studio LTD. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10532 (N.D. Ill. Oct. 31, 2025); *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10575 (N.D. Ill. Oct. 31, 2025).

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA"), together working as part of the Department of Commerce's Internet Policy Task Force, conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the internet economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January 28, 2016 (see Exhibit 1), which

11

recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes — works created through changing and combining existing works to produce something new and creative — as part of a trend of user generated content. *Id.* at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted since "[t]hese circumstances present the clearest need for deterrence and punishment." *Id.* at 99. Moreover, regarding straight-out counterfeiting where impeding creativity is not a concern, the Office of the U.S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (see Exhibit 2), highlighting disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations.

Accordingly, a significant consideration should be whether infringing sales were made over the internet, the rationale being that sales over the internet increase the amount of an award because use of the internet made the infringement widely available. A finding of willful infringement is warranted along with an award of one hundred thousand dollars ($100,000) in statutory damages. *See, e.g., The MacNeil Studio LTD. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10532 (N.D. Ill. Oct. 31, 2025); *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-10575 (N.D. Ill. Oct. 31, 2025).

### C. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's Roger Hall Works. In this District, the "standard for a permanent injunction is essentially the

12

same as for a preliminary injunction except that in seeking a permanent injunction, [Plaintiff] must prove actual success on the merits rather than likelihood of success on the merits." *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998); *see Plummer v. American Institute of Certified Public Accounts*, 97 F.3d 220, 229 (7th Cir. 1996) ("Thus, when the plaintiff is seeking a permanent injunction, the first of the four traditional factors is slightly modified, for the issue is not whether the plaintiff has demonstrated a reasonable likelihood of success on the merits, but whether he has in fact succeeded on the merits."). The remaining factors are (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied, and the potential effect on the public interest. *Id.*

### 1. Plaintiff Has Proved Actual Success on the Merits

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments*, 482 F.3d at 914. Here, Plaintiff owns the registered copyrights for the Roger Hall Works. Declaration of Roger Hall (the "Hall Declaration") at ¶ 5. The accused products use the protected works or are derived from the distinctive creative content found in the Roger Hall Works. As such, the infringement is clear and establishes that Plaintiff has proven actual success on the merits of this claim.

### 2. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis*

*Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). The harms caused by the copyright infringement of the Roger Hall Works are insidious: the infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, devalue the Roger Hall Works by associating them with inferior-quality goods, and undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity, which threatens Plaintiff's ability to develop further artwork and markets for the existing works. *See* Hall Declaration at ¶¶ 8–12. These are recognized irreparable harms for which monetary compensation is inadequate. *See Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013–14 (C.D. Cal. 2011). Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct. *See* Hall Declaration at ¶ 13.

### 3. The Balance of Hardships Tips in Plaintiff's Favor

As willful infringers, Defendants are entitled to little equitable consideration. "One who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since a defendant "cannot complain" of being forced to cease its infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014–15 (C.D. Cal. 2011). As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Roger Hall Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

### 4. Issuance of the Injunction is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). Protecting the creative content of

14

the Roger Hall Works protects the integrity of Roger Hall Products and encourages creative expression. Unless Defendants' unauthorized use of the Roger Hall Works is enjoined, the public will continue to be confused and misled by Defendants' conduct. Plaintiff is also entitled to injunctive relief so that Plaintiff can take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling infringing Roger Hall Products.

## V.    CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against Defaulting Defendants, award statutory damages in the amount of one hundred thousand dollars ($100,000) from each Defaulting Defendant pursuant to 17 U.S.C. § 504(c)(2), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Roger Hall Products and transferring all assets in Defaulting Defendants' financial accounts operated by Temu to Plaintiff.

sDATED: July 29, 2026                    Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
Email: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ Keith A. Vogt
Keith A. Vogt, Esq.